# EXHIBIT A

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | FOR THE SECOND JUDICIAL CIRCUIT |
| COUNTY OF AIKEN ) | CIVIL ACTION NO. 07-CP-02-1588 |
| ) | |
| Mary Boyd ) | |
| ) | |
| PLAINTIFF(S) ) | |
| ) | |
| VS. ) | SUMMONS |
| ) | Plaintiff Demands a Jury Trial |
| Norfolk Southern Corporation and ) | |
| Norfolk Southern Railway Company,) | |
| Benjamin Aiken, Mike Ford and ) | |
| Jimmy Ray Thornton ) | |
| ) | |
| DEFENDANTS ) | |

**TO THE DEFENDANTS, ABOVE NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the Complaint, a copy of which is herewith served upon you, and to serve a copy of your answer to said Complaint upon the subscriber, at their office at 335 CITY PARK AVE, NEW ORLEANS, within thirty (30) days after the service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, Plaintiff(s) will apply to the Court for a judgment by default as to the relief demanded in the Complaint.

Respectfully submitted, this ___ day of November, 2007

LAW OFFICES OF
DOUGLAS M. SCHMIDT, APLC

Douglas M. Schmidt
335 City Park Avenue
New Orleans, LA 70119
South Carolina Bar No. 10432
Ph (504) 482-5711
Fax (504) 482-5755

$150.00 PAID
Recpt. # 228654
Check # 413747193

11-9   7@
100

IN THE STATE OF SOUTH CAROLINA)   IN THE COURT OF COMMON
                        )   PLEAS FOR THE SECOND
COUNTY OF AIKEN          )   DISTRICT

Mary Boyd,             )   CIVIL ACTION NO. 07-CP-02-1588
         **Plaintiff(s)**  )

                  )   **COMPLAINT**
**v.**                 )

**NORFOLK SOUTHERN**    )   **JURY TRIAL DEMANDED**
**CORPORATION NORFOLK**   )
**SOUTHERN RAILWAY**     )
**COMPANY, MIKE FORD,**    )
**BENJAMIN AIKEN, AND**     )
**JAMES THORNTON**       )
        **Defendants**  )

## COMPLAINT

COMES NOW Mary Boyd, plaintiff in the above contained matter files this Complaint pursuant to the South Carolina Code of Civil Procedure for injuries and damages arising out of train derailment which occurred in Graniteville, South Carolina and the subsequent release of toxic chemicals which occurred on Thursday, January 6, 2005, represents the following:

1.

Plaintiff Mary Boyd is a person of the full age of majority and is a resident of North Carolina:

2.

At all material times herein, Plaintiff was a resident of North Carolina and was present in Aiken County at the time of the collision and derailment of the defendants, Norfolk Southern Corporation and/or Norfolk Southern Railway Company trains which occurred on or about January 6, 2005 in Graniteville, South Carolina.

11-9   7@100

1

3.

Made defendant's herein:

(a)    Norfolk Southern Corporation (hereinafter referred to as NSC), a foreign corporation

authorized to do and regularly doing business in Graniteville, Aiken County, South

Carolina.  Its principal place of business is located in Virginia and its Agent for Service

of Process for the State of South Carolina is CT Corporation Systems, 75 Beattie Place,

Greenville, South Carolina 29601.  NSC owns or has an interest in Defendant, Norfolk

Southern Railway Company, acted in its own interest, and is also liable for the acts or

omissions of NSRC and its employees

(b)    Norfolk Southern Railway Company hereinafter (referred to as NSRC or collectively

with NSC referred to as NS or Norfolk Southern) is a foreign corporation authorized to

do and doing business in Aiken County, South Carolina.  Its principal place of business is

located in Norfolk,Virginia.

(c)    Defendant, Benjamin Aiken (hereinafter referred to as "Aiken") is a person of the full age

of majority and a resident of the city of Columbia, Richland County, State of South

Carolina.

(d)    Defendant, Mike Ford (hereinafter referred to as "Ford") is a person of the full age of

majority and a resident of the city of Columbia, Richland County, State of South

Carolina.

(e)    Defendant, James Thornton (hereinafter referred to as Thornton) is a person of the full

age of majority and a resident of the City of Columbia, Richland County, South Carolina

2

4.

Defendants NSC and NSRC own real and personal property in South Carolina including Aiken County. They regularly conduct business in Aiken County, have an agent and office in Aiken County and all defendants caused injuries and damages in South Carolina.

5.

Venue and jurisdiction is proper in this Court.

6.

At all material times herein, the defendant, "Aiken" was employed by the defendant, NS and assigned to work as a locomotive engineer on a train owned, operated and controlled by the defendant, NSC and designated as P22.

7.

At all material times herein, the defendant, "Ford" was employed by the defendant, NS and assigned to work as a brakeman on a train owned, operated and controlled by the defendant, NS and designated as Train P22.

8.

On or about January 5, 2005, the regularly assigned conductor for the P-22 was on vacation. The defendant, Thornton who was P-22 train's regular assigned brakeman was moved up to temporarily fill the conductor position.

9.

On or about January 5, 2005, the defendant, Ford was taken from another railroad line by the defendant, NS and temporarily assigned to work as a brakeman on the P22 train.

3

10.

On or about January 5, 2005, the regular assigned engineer for P-22 reported off-duty and his vacancy was filled with the defendant, Aiken who was designated as an "extra board engineer."

11.

The defendant's P-22 Train operated Monday through Friday from the NS yard at Aiken, South Carolina.  The train crew (engineer, conductor and brakeman) of P-22 normally went on duty at 7:00 a.m. and worked during the day delivering and/or picking up railcars at several local industries along the main line.

12.

On or about January 5, 2005, the defendant crew members, Thornton, Ford, and Aiken were assigned to work the NSC Columbia – Augusta subdivision which in this area consists of non-signaled track and so the authority for movement is via track warrant control (TWC) which is issued by the train dispatcher employed by the defendant, NS and located in Greenville, South Carolina.

13.

On or about 8:13 a.m. on January 5, 2005 the defendant, Thornton received Track Warrant No. 779 authorizing the crew of Train P-22 to occupy, operate, and work on the east-west main line designated as the SA line, between milepost (MP) SA 51.0 and Warrenville, South Carolina (MP) SA 63.4.

14.

On or about 2:10 p.m. on January 5, 2005, the defendant, Thornton received Track Warrant No. 861 authorizing the crew of Train P-22 to occupy, operate, and work on the north-south main line, designated as the R line, between (MP) R 185.0 and (MP) R 171.0.

15.

During the afternoon of January 5, 2005, the defendants Thornton, Ford, and Aiken worked various industries along the R line from both South Carolina (MP) R 185.0 north to the Bridgestone industrial center located at (MP) R 171.8.

16.

On or about 5:50 p. m. on January 5, 2005, the defendants Thornton, Ford, and Aiken completed their duties at the Bridgestone facility and then proceeded to the Avondale Plant to drop off two railway cars containing sodium hydroxide solution (caustic soda). Upon completing their work at Avondale they were to proceed south to Warrenville and tie up the train for the night. The defendant, Thornton had contacted the taxi service to pick them up at Warrenville at 6:15 p.m.

17.

On or about 6:10 p.m. the defendants, Thornton, Ford and Aiken who were operating Train P-22 which contained twelve freight cars, arrived at the Avondale facility.

18.

On or about 6:10 p.m. the defendant, Ford lined the manual track switch to allow Train P-22 to leave the main R line track onto the Avondale Mills Gregg Industry Track so Train P-22 could enter the Avondale facility.

19.

The defendants, Thornton, Ford and Aiken began their operations at the Avondale facility but did not have enough time to complete their work and proceed to the final destination located in Warrenville as described in paragraph 15.

20.

The defendants Thornton, Ford and Aiken secured most of the train within the Avondale facility. However, they left a locomotive and two railroad cars parked on the Avondale Mills Gregg Industrial track outside of the gates of the Avondale facility, north of the R Line manual switch at (MP) R 178.3.

21.

On or about 6:50 p.m., the taxi arrived to pick up the defendants at the Avondale Mills Gregg Industry Truck and take them back to the NSC Aiken Yard Office which is owned, operated and controlled by the defendant, NS.

22.

The defendants Thornton, Ford, and Aiken loaded their luggage into the taxi, entered the cab and then drove passed the R line manual switch without stopping to check and see whether they had realigned the switch to its proper position back to the main line.

23.

The defendants, Thornton, Ford, and Aiken failed to realign the manual switch to the R line and/or the main line prior to leaving the Avondale facility located in Graniteville, South Carolina, and returning to the NSC Aiken Yard Office in Aiken, South Carolina.

24.

On or about 7:15 p.m. the defendants, Thornton, Ford, and Aiken arrived at the NSC Aiken Yard Office and the defendant, Aiken left the office in his vehicle to return home.

25.

Defendants, Thornton and Ford remained at the station in order to perform other duties on behalf of NS which included releasing the track warrants with the NSC dispatcher and completing administrative work involving switch lists and work orders.

26.

On or about 7:50 p.m., the defendant, Thornton instructed the defendant, Ford to clear the open track warrants in effect which allowed them to perform the work as described in the preceding paragraphs. Said warrants were cleared by the NSC dispatch office in Greenville, South Carolina at approximately 7:54 p.m. which meant that the R line was now clear and available for assignment to other trains including Train P-192 which was subsequently involved in this accident to travel on the R Line.

27.

The defendants, Thornton and Ford cleared the open track warrants with the dispatcher without realigning the manual switch to the R line, the main track from the Avondale Mills Gregg Plant industrial track in violation of NS policy.

28.

The defendant, NS through its NSC Train Dispatcher located in Greenville, South Carolina cleared the open track warrants without first ascertaining from the defendants, Thornton

7

and Ford whether the R line manual switch was aligned in the proper position to the main R line
and not to the Avondale Mills Gregg Industry track.

29.

On January 6, 2005, the defendant, NS operated another train designated as P 192 whose
crew consisted of a locomotive engineer and conductor.

30.

The crew of P-192 had traveled to the NSC Augusta Yard to pick up railcars.

31.

The makeup of Train P-192, prior to leaving the NSC Augusta Yard, consisted of two
locomotives (NS 6653 and NS 6593) and 42 railcars with 17 of them empty. The trailing
tonnage of this train was 3,520 tons and its total length was 2,553 feet. Fourteen of the twenty
five loaded railcars were designated as containing hazardous materials, three of which contained
the toxic chemical chlorine.

32.

Approximately 2:13 a.m. the P192 crew received a Track Warrant authorizing them to
travel from Augusta, Georgia to Summit, South Carolina which required them to pass through
Graniteville, South Carolina on the R Line.

33.

As Train P-192 approached the Avondale Mills Gregg Industrial Track while traveling on
the main R line its speed was at least 48 mph.

34.

The crew of P-192 did not receive any warning while traveling on the main R line track
that the R line manual switch was not properly aligned for them to pass safely on the R line, but

8

instead, was aligned to the Avondale Mills Gregg Industrial Track leading directly into the Avondale facility.

35.

When the crew of Train P-122 reached the improperly aligned R line manual switch, it entered the Avondale Mills Gregg Industrial Track and collided with the locomotive and the two railway cars parked by the defendants, Thornton, Ford, and Aiken the previous day, January 5, 2005.

36.

The collision caused by the defendant, NSC train P-192 striking the locomotive and railway cars parked by the defendants Thornton, Ford, and Aiken caused a train derailment and a pile up of the two locomotives and the first sixteen (16) cars of Train 192.

37.

As a result of the collision and train derailment described above, the 9th car of Train 192 designated as UTLX 900270, a tank car loaded with chlorine a hazardous chemical, ruptured, causing chlorine vapor to release into the atmosphere.

38.

The tanker car loaded with chlorine described in the preceding paragraph was carrying 131 tons of chlorine, seventy (70)% of which was immediately released into the atmosphere after the collision and derailment.

39.

The collision described in the preceding paragraphs occurred in the heart of the town of Graniteville, South Carolina which has approximately six thousand (6,000) residents.

9

40.

The train derailment and subsequent toxic discharge of chlorine gas was responsible for the deaths of at least nine people and has been described as the worst train disaster to occur within the United States.

41.

Plaintiff alleges that the chemicals released as a result of the train derailment are hazardous and harmful chemicals which can cause medical problems and damage to property.

42.

Upon information and belief, chlorine is a corrosive greenish-yellow gas that is especially dangerous because it mixes easily with water including moisture of the throat and lungs to form hypochlorous (HOCL) and hydro-choloric (HCL) acids.

43.

Upon information and belief, low exposure to chlorine gas can cause sore throats, coughing attacks, blurry and irritated eyes, runny nose and nasal congestion, breathing difficulties and eye irritation and soreness. High exposure to chorine gas causes burning of the eyes and skin, reactive air disease, bronchitis and other ailments. Very high exposure to chlorine gas can cause severe eye and skin burns, lung collapse and in the most extreme cases, death.

44.

As a result of the train collision and derailment described above and the subsequent toxic discharge of chlorine gas and/or other chemicals, plaintiff suffered damages.

45.

10

Plaintiff(s) respectfully submit(s) that the collision, train derailment and the toxic discharge of chlorine gas and other chemicals described above was caused solely by the fault, and/or negligence and/or gross negligence and/or strict liability or any other fault of the defendants NSC, NSRC Benjamin Aiken, Mike Ford, and James Thornton in the following non-exclusive particulars:

### I Norfolk Southern Corporation and Norfolk Southern Railway Company

a.      Allowing a hazardous situation to exist because of faulty and/or dangerous equipment.

b.      Inadequately and negligently in the hiring, training and continuing education of its employees and/or railroad personnel.

c.      Negligently implementing policies, rules and/or regulations to insure the safe movement of its trains and cargo by its crews on its railroad tracks.

d.      Employing untrained and/or poorly trained employees and failing to properly train and supervise their employees.

e.      Failing to test and provide continuing education to its employees and railroad personnel to insure that they follow proper railroad procedures.

f.      Failing to conform to federal statutes, regulations and/or rules regarding train and railroad safety.

g.      Failing to provide adequate signals to adequately warn on coming trains when a switch is not aligned in the proper position.

h.      Failing to ascertain and/or discover whether the equipment was in proper working order and to insure safety to persons living or present in the surrounding area.

11

    i.    Failing to provide any regulations and/or procedures to insure that their employees were physically and/or mentally fit to perform their duties.

    j.    Failing to use due care in the transportation and storage of hazardous materials.

    k.    Failing to put proper procedures in place to insure that railroad switches are in their proper position before clearing track warrants and allowing other trains to travel on these tracks.

    l.    Failing to have procedures and/or equipment in place to warn oncoming trains when a switch is not in its proper position.

    m.    Failing to provide appropriate accident prevention equipment.

    n.    Failing to correct an open and obvious defective condition.

    o.    Failing to insure that its employees obey federal statutes, rules and regulations regarding train and railroad safety.

    p.    Failing to conform to the state law and regulations of the State of South Carolina.

    q.    Negligently staffing the parked train with a crew that did not have reasonable rest and accordingly, said crew was fatigued, rushed, and distracted thereby causing them to fail to properly realign the switch.

    r.    Such other and further particulars as maybe found during discovery.

II.    Defendants, Thornton, Ford, and Aiken

    a.    Failing to perform their job duties in a safe manner.

    b.    Failing to realign the manual switch back to the R line on the main track before leaving the Avondale facility.

    c.    Failing to check all railroad switches before leaving the work site.

d.    Failing to check all railroad switches before clearing the open track warrants.

e.    Acting in a careless and negligent manner without due regard for the safety of others, including the residents of Graniteville, and the surrounding community.

f.    Failing to adhere to federal statutes, rules, and/or regulations regarding train and railway safety.

g.    Failing to adhere to the rules, and/or regulations promulgated by the defendant NSC, NSRC and any other railroad entities.

h.    Failing to adhere to the law and regulations of the State of South Carolina.

i.    Failing to conform to a reasonable standard of conduct under all of the circumstances.

j.    Acting in a careless and negligent manner without due regard for the safety of others.

k.    Failing to exercise the degree of care that a reasonable and prudent person would have exercised under the same or similar circumstances.

l.    Such other and further particulars as may be found during discovery.

46.

Plaintiff further shows that the defendants, Thornton, Ford, and Aiken violated NSC Operating Rule 104 which states "where trains or engines are required to be reported clear of the track, such report must not be made until switch and derail if any, have been secured in the normal positions."

47.

Plaintiff also shows that the defendants, Thornton, Ford, and Aiken also violated NSC Rule 181 which states in its pertinent part "a crewmember or operator or employee in charge of

on track equipment, must report to the dispatcher when the train or equipment has cleared the limits. When clearing at a point where a switch must be returned to normal position, "clear" must not be given until the switch has been locked in normal position."

48.

The defendant, Thornton violated NSC Operating Rule 581 which states "Conductors have charge of trains to which they are assigned and of all employees thereon. They are responsible for safe and proper management of their trains, for protection and care of passengers and property, for performance of duty by train employees, and for observance and enforcement of all rules and instructions."

49.

The defendants, NSC Thornton, Ford, and Aiken violated the federal Hours of Service Act whose purpose has been interpreted by the Federal Railroad Administration (FRA) as follows. "The purpose of the law is to promote the safety of employees and travelers on railroads by limiting the hours of service of employees."

50.

In regards to the federal Hours of Service Law, the FRA also stated: "The Act establishes two limitations on hours of service. First, no employee engaged in train or engine service may be required or permitted to work in excess of twelve consecutive hours."

51.

The FRA issued federal regulations to administer the Hours of Service Act which includes a description of covered service activities and states the following:

14

a.    For purposes of this part, <u>time on duty of an employee actually engaged in or connected with the movement of any train,</u> including a hostler begins when he reports for duty and ends when he is finally released from duty, and includes.

1.    Time enjoyed in or connected with the movement of any train.

4.    Time spent in deadhead transportation en route to a duty assignment.

3.    Time engaged in any other service for the carrier. (49 CFR, Part 228, Section 228.7).

52.

The FRA has promulgated the following penalties for violations of the federal Hours of Services Law as follows:

Any person (an entity of any type covered under 1U.S.C.I, including but not limited to the following:  a railroad; a manager a supervisor, official or other employee or agent of a railroad; who violates any requirement of this part or causes the violation of any such requirement is subject to a civil penalty of at least $550.00 and not more than $11,000.00 per violation except that.   Penalties may be assessed against individuals <u>only for willful violations.</u> (49CFR, Part 228, Section 228.28).

53.

The defendant, Ford who was a substitute brakeman (see paragraphs 7, 9) on Train P-22 was working as a temporary "hold down" assignment which the FRA defines as follows:

Hold downs are temporary assignments made at the behest of the railroad for a period of time greater than one shift.  The length of a hold down is usually determined by a collective bargaining agreement.  The length of the hold down does not affect its temporary status.  <u>In these temporary assignments, FRA considers the employee an</u>

15

incumbent of the extra board and its fixed location as the employee's regular reporting

point    Travel time is considered in the same context as a temporary one-day assignment

(deadheading) (FRA OP Compliance Manual Chapter 8).

54.

Since the defendant, Ford was considered to be working a temporary "hold down" and

considered holding an extra board assignment for purposes of the Hours of Service Act and its

accompanying regulations, his travel time (or dead head time) from his home to his work

assignment on January 5, 2005 was considered on duty time and subject to the 12 hour

limitation.

55.

The defendant, Ford drove from his home in Columbia, South Carolina to the Aiken

Station where the P-22 Train was located, arriving on time for his 7:00 a.m. work assignment.

The defendant, Ford testified that it takes him fifty (50) minutes to drive from his residence to

the Aiken station.

56.

Pursuant to the federal regulations cited in the preceding paragraphs, the defendant,

Ford's work day on January 5, 2005 began at 6:10 a.m. the time he left home to go to work and

ended at 6:10 p.m. based on the designation his work assignment for that day and the Hours of

Service Act and its accompanying regulations.

57.

The defendants Thornton, Ford, and Aiken arrived at the Avondale facility at the exact time that the defendant, Ford was required to go off duty as mandated by the Federal Hours of Service law and its accompanying regulations.

58.

Thus, the work that the defendant Ford performed at the Avondale facility including the alignment of the manual switch from the R line to the Avondale Mill Gregg Industrial track was performed in direct violation of federal Hours of Service Law and its accompanying regulations.

59.

In addition, the work that the defendant Ford performed at the Aiken Station which included releasing the track warrants and other administrative work was completed in violation of federal Hours of Service Law and its accompanying regulations.

60.

The defendant, Thornton on January 3, January 4, and January 5, 2005 performed work in violation of the Federal Hours of Service Law and its accompanying regulations. He admitted under oath that he performed administrative duties of compiling switch lists and work reports and faxing said materials to the Central Yard Operations located in Atlanta, Georgia after 7:00 p.m. when his shift was completed as mandated by the federal Hours of Service Law and its accompanying regulations.

61.

17

On January 5, 2005, the defendant, Thornton was in violation of the Federal Hours of Service law and its regulations when he directed the defendant, Ford to release the track warrants after 7:00 p.m. after his shift was completed as mandated by the federal Hours of Service Law and its accompanying regulations.

62.

Thus, the critical errors which caused this horrific accident, the lining of the manual switch from the main line to the industrial track, the failure to realign the switch to its proper position before leaving Graniteville and later clearing the track warrants at the Aiken Station without realigning the manual switch were performed in direct violation of the Federal Hours of Service Law and its accompanying regulations.

63.

The defendant NS is liable to your plaintiff because of its systemic failure to comply with the federal Hours of Service law and its violation of federally mandated responsibility to ensure that their employees perform their work assignments within the time limitations contained in the federal House of Service law and its accompanying regulations.

64.

Upon information and belief, the FRA allows railroads like the defendant, NS to maintain Hours of Service records of their employees electronically in computer data bases.

65.

Upon information and belief, inspectors of the FRA reviewed the Hours of Service records of the crew for Train P-22 for the month of December, 2004 and found ten violations which amounts to a violation every other day of work.

66.

18

In addition, a review of FRA inspection records for the years 2003 and 2004 reveal that FRA inspectors cited the defendant, NS for 7,223 instances of its failing to comply with the federal Hours of Service regulations (48 CFR 228)

67.

Furthermore, FRA inspectors cited the defendant, NS for 93 violations of the federal Hours of Service law statute for allowing covered and/or completed service to be performed by its employees beyond the maximum 12 hour period mandated by federal law.

68.

The defendant, NSC is also liable to our plaintiff for rehiring the defendant Thornton after firing him for an incident in March, 1999 in which he failed to properly align a main track switch in similar circumstances as this case which nearly caused a serious accident.

69.

The defendant, NS is liable to your plaintiff for failing to conduct operational tests and inspections (efficiency tests) as required by FRA and set forth in regulations contained in 49 CFR, Part 217 Railroad Operating Rules.

70.

After a review of inspection records for the years, 2003 and 2004, FRA inspectors discovered 564 operating and safety rule violations by the defendants' employees engaged primarily in train movements along its railroad tracks.

71.

FRA inspectors also found 23 NS operating rule violations regarding the improper operation of switches by its employees and railroad personnel.

72.

19

A review of the defendant, Thornton's efficiency test records compiled by the defendant, NS indicate that in 2004 he was only tested on 14 working days which represents only 5.6% of his total work days.

73.

The defendant NSC only required the defendant, Thornton to undergo efficiency tests based on Operating Rule and he was found to have violated Rule 104(b) by failing to check switch points. In addition, he did not undergo any efficiency tests based on Rule 181 which requires employees to check that switches are properly aligned before releasing a track warrant. He also was observed to be in violation of 10 other rules, including Operating Rule 581 which provides that it is the responsibility of the Conductor to ensure that train crew members comply with all operating and safety rules.

74.

A review of the defendant Ford efficiency test records compiled by the defendant, NS indicates that he was tested only on 13 days in 2004, and accordingly underwent operational tests or inspections on only 5.2% of his total work days.

75.

The defendant, NS did not require the defendant, Ford to undergo one single efficiency test based on Operating Rule 104 which governs the proper positioning of switches and requires employees to check the position of switch points before leaving the scene, which is in this case, he failed to do, causing this horrific accident.

76.

The defendant, NS did not require the defendant, Ford to undergo one single efficiency test on Operating Rule 181, which requires employees check that switches are properly lined before releasing a track warrant which in this case he failed to do causing this horrific accident.

77.

The defendant, NSC's failure to adequately test its employees as mandated by federal law was grossly negligent, especially considering the fact that its trains were involved in 140 accidents caused directly by improperly lined switches in 2003,2004, 15 percent of which, occurred on main siding and industrial tracks, that twenty-one (21) of these accidents occurred within the Piedmont Division in which Graniteville is located and the NS management found 12 instances of improperly lined switches on main tracks in 2004, within one year of this accident.

78.

At the time of the accident, the main line/industry spur track high-stand manual switch at mile post R. 178.3 was equipped with a passive switch indicator (reflective switch target) that displayed a red circular plate about 14 inches in diameter and perpendicular to the track when the switch is aligned for movement onto the industry track.

79.

Upon information and belief, when the manual switch is aligned for entry to the industry track, the switch position indicator is not identifiable to the locomotive engineer traveling on a north bound train until he is within 566 feet from the switch.

80.

Plaintiff respectfully submits that the manual switch with its switch positioner indicator was not clearly visible to the crew of the defendant's P192 train and/or did not provide adequate

warning by them to stop the train in time to prevent the collision, the train derailment and toxic discharge chlorine and other chemicals.

81.

Plaintiff respectfully contends that the defendants, NSC, Thornton, Ford, and Aiken conduct was reckless, willful, wanton and/or malicious rising to such a level that an award of exemplary and/or punitive damages is appropriate in this case.

82.

Plaintifff also contends that the defendant, NSC should be subject to an award of exemplary and/or punitive damages because it has knowingly, systemically, and intentially violated federal statutes and its accompanying regulations regulating train and railways safety, and in addition, has violated its own operating rules which proximately caused the collision, the train derailment and the toxic discharge of chlorine gas and other chemicals into the atmosphere causing the injuries and damages sustained by your plaintiff.

83.

Upon the applicable provisions of South Carolina law including but not limited to Section 15-33-135 and 58-17-3950 plaintiff is entitled to and therefore prays for an award of punitive and/or exemplary damages because of the wanton, willful, reckless and/or egregious nature of the conduct of the Defendants.

84.

In addition, to the conduct listed above and in the alternative thereto the injuries and damages suffered by plaintiff, which acts and omissions may be beyond proof by your plaintiff herein but within the knowledge and control of the defendants, there being no other conclusion. That the collision, train derailment and the toxic release of chlorine gas and other chemicals

resulted from the fault of the defendants. Therefore, plaintiff pleads the doctrine of res ipso loquitor

85.

Plaintiff also submits that it has a cause of action under South Carolina law against the individual defendants, Thornton, Ford, and Aiken and therefore this case is not removable to federal court.

86.

The Honorable Judge Margaret Seymour of the United States District Court has ruled in the Graniteville cases that there was a cause of action against the individual defendants which destroys diversity of citizenship and prevents removal of this case pursuant to 28 U.S. C. 1332.

87.

Plaintiff was in the vicinity of the train derailment and the toxic discharge of chlorine gas and other chemicals which has caused her to suffer severe and permanent injuries to her body including but not limited to acute bronchitis, and moderate obstructive airways disease.

88.

In addition, plaintiff as a result of her exposure to the toxic discharge of chlorine gas and other chemicals has suffered considerable fear, anguish, and discomfort and inconvenience.

89.

Plaintiff as a result of the collision, train derailment, and the toxic discharge of chlorine and other chemicals sustained damages and has continued to suffer damages including but not

23

limited to personal injury, pain and suffering, mental anguish, loss of the enjoyment of life, disability, emotional, and mental damages, loss of consortium, society and companionship, loss income, impairment of earning capacity, lost profits, economic damages, property value devaluation, evacuation, and inconvenience, and any other damages in which he/she is entitled to under South Carolina law.

90.

Upon further information and belief, plaintiff as a result of the collision, the train derailment and toxic discharge of chlorine gas and other chemicals contends he will suffer adverse health consequences and/or diseases including but not limited to cancer in the future.

91.

Plaintiff is entitled to and prays for a trial by jury to all issues so triable

WHEREFORE, plaintiff pray:

1. That summons be issued to Norfolk Southern Corporation, Norfolk Southern Railway Corporation, Benjamin Aiken, Mike Ford, and James Thornton, along with a copy of the complaint and that they be cited to appear and answer same;

2. After due proceedings had, including trial by jury, that Judgment be rendered in favor of your plaintiff Mary Boyd and against the defendants, Norfolk Southern Corporation, Norfolk Southern Railway Company, Benjamin Aiken, Mike Ford, and James Thornton in an amount to compensate plaintiff Mary Boyd for all damages to which she is entitled to by law including an award of exemplary and/or punitive damages.

3.    For legal interest on all damages awarded from the date of judicial demand until paid;

4.    For, all costs of this litigation.

5.    For any relief or damages as this Court may deem just and proper.

Respectfully submitted,

Douglas M. Schmidt, APLC
South Carolina Bar No. 10432
283 A. P. Nivens St.
Graniteville, S.C. 29829
Phone: (803) 663-1900
Fax: (803) 663-1906

PLEASE ISSUE A SUMMONS TO:

The defendant, Norfolk Southern Corporation
through its agent for service of process
CT Corporation Services
75 Beattie Place
Greenville, S.C. 29601

The defendant, Norfolk Southern Railway Company
through its agent for service of process
CT Corporation Services
75 Beattie Place
Greenville, S.C. 29601

The defendant, Benjamin Aiken
181 Stockmoor Dr.
Columbia, S.C. 29205

The defendant, Mike Ford
3404 Manor Rd.
Columbia, S.C. 29205

The defendant, James Thornton
1770 Andrews Rd.
Columbia, S.C. 29201

25

STATE OF SOUTH CAROLINA )
)
COUNTY OF _Aiken_ )
)
_Mary Boyd_ )
)
Plaintiff(s) )
)
vs. )
)
_Norfolk Southern Corporation, et. al._ )
Defendant(s) )

IN THE COURT OF COMMON PLEAS

CIVIL ACTION COVERSHEET

_2007_-CP-_02_-_1588_

| | |
|---|---|
| (Please Print) Submitted By: _Douglas M. Schmidt_ Address: _335 City Park Avenue_ _New Orleans, LA 70119_ | SC Bar #: _#10432_ Telephone #: _(504) 482-5711_ Fax #: _(504) 482-5755_ Other: E-mail: _GRANITEVILLETRAINWRECK@yahoo.com_ |

**NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.**

## DOCKETING INFORMATION *(Check all that apply)*
***If Action is Judgment/Settlement do not complete***

☒ JURY TRIAL demanded in complaint.  ☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR (certificate attached).

## NATURE OF ACTION *(Check One Box Below)*

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | ☐ Notice/ File Med Mal (230) | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | ☐ Other (299) | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | | ☒ Personal Injury (350) | ☐ Possession (450) |
| | | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☐ Other (399) | ☐ Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Sexual Predator (510) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Mandamus (520) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Habeas Corpus (530) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
| ☐ Other (599) | ☐ Transcript Judgment (740) | ☐ Forfeiture (840) | ☐ Probate Court (940) |
| | ☐ Lis Pendens (750) | ☐ Other (899) | ☐ SCDOT (950) |
| | ☐ Other (799) | | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Administrative Law Judge (980) |

| Special/Complex /Other | | | |
|---|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | | ☐ Public Service Commission (990) |
| ☐ Automobile Arb (610) | ☐ Unfair Trade Practices (640) | | ☐ Employment Security Comm (991) |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | | ☐ Other (999) |
| ☐ Other (699) | | | |

Submitting Party Signature: _____    Date: _11/8/07_

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann §15-36-10 et. seq.

C O P Y
ORIGINAL FILED

STATE OF SOUTH CAROLINA   )
                             )
COUNTY OF AIKEN           )

Mary Boyd                        )

          Plaintiff,       )

      v.                     )

Norfolk Southern Corporation and Norfolk  )
Southern Railway Company, Benjamin   )
Aiken, Mike Ford and Jimmy Ray Thornton, )

          Defendants.     )

IN THE COURT OF COMMON PLEAS

AIKEN COUNTY
CLERK OF COURT

**DEFENDANTS NORFOLK
SOUTHERN CORPORATION AND
NORFOLK SOUTHERN RAILWAY
COMPANY'S ANSWER TO
PLAINTIFF'S COMPLAINT**

C.A. No.: 2007-CP-02-1588

**(JURY TRIAL DEMANDED)**

The defendants, Norfolk Southern Corporation and Norfolk Southern Railway Company,

answering Plaintiff's complaint would respectfully allege and show unto the court as follows:

<u>**FOR A FIRST DEFENSE**</u>

I.

The defendants, Norfolk Southern Corporation (hereinafter "NSC") and Norfolk

Southern Railway Company (hereinafter "NSRC"), lack sufficient information to form a belief

as to the truth of the allegations of paragraphs 1 and 2 of the compliant and, therefore, deny

them.

II.

The defendants admit so much of the allegations of paragraph 3 of the complaint as

allege that NSC is a corporation organized and existing pursuant to the laws of the state of

Virginia with its principal place of business located in Norfolk, Virginia. The defendants further

admit that NSRC is a corporation organized and existing pursuant to the laws of the state of

Virginia with its principal place of business located in Norfolk, Virginia and that it is a wholly

owned subsidiary of NSC and conducts business in South Carolina and Aiken County. The

defendants further admit so much of the allegations of paragraph 3 of the complaint as allege that Benjamin Aiken (hereinafter "Aiken"), Mike Ford (hereinafter "Ford"), James Thornton (hereinafter "Thornton") are residents of the State of South Carolina. The remaining allegations of paragraph 3 of the complaint, and its subsections, are denied.

### III.

The defendants admit so much of the allegations of paragraph 4 of the complaint as allege that NSRC owns property in South Carolina and conducts business in Aiken County, South Carolina, including maintaining an office in Aiken County. The remaining allegations of paragraph 4 of the complaint are denied.

### IV.

The defendants admit the allegations of paragraph 5 of the complaint.

### V.

The defendants admit so much of the allegations of paragraphs 6, 7 and 8 of the complaint as allege that defendants Aiken, Ford and Thornton were employees of NSRC and working the Aiken Local job within the course and scope of their employment on January 5, 2005. The remaining allegations of paragraphs 6, 7 and 8 of the complaint are denied.

### VI.

The defendants deny the allegations of paragraph 9 of the complaint and would allege and show that Defendant Ford exercised his seniority to take the brakeman job of the P-22 Train.

### VII.

The defendants admit so much of the allegations of paragraph 10 of the complaint as allege that the regularly assigned engineer for Train P-22 did not work on January 5, 2005 and

that Defendant Aiken working off the extra board was assigned to the P-22 Train. The remaining allegations of paragraph 10 of the complaint are denied.

## VIII.

The defendants admit so much of the allegations of paragraph 11 of the complaint as allege that the regular reporting point for the crew of the P-22 Train was the Aiken Depot located in Aiken, South Carolina and that it was a Monday through Friday job that went on duty at 7:00 a.m. and delivered railcars to local industries on the R and SA lines. The remaining allegations of paragraph 11 of the complaint are denied.

## IX.

The defendants admit so much of the allegations of paragraph 12 of the complaint as allege that Defendants Thornton, Ford and Aiken were the crew of the P-22 Train on January 5, 2005 and worked in an area that included non-signaled track through in which the method of operation was track warrant control. The remaining allegations of paragraph 12 of the complaint are denied.

## X.

The defendants admit so much of the allegations of paragraphs 13 and 14 of the complaint as allege that Defendant Thornton obtained Track Warrant No. 779 at 8:13 a.m. on January 5, 2005, which provided authority to Train P-22 to occupy and operate along the tracks designated along the SA line between mile post SA51.0 and Warrenville. The defendants further admit that Defendant Thornton obtained Track Warrant No. 861 allowing Train P-22 to occupy and operate on the R line between mile posts R185.0 and R171.0. The remaining allegations of paragraphs 13 and 14 of the complaint are denied.

XI.

The defendants admit so much of the allegations of paragraphs 15, 16 and 17 of the complaint as allege that Defendants Thornton, Ford and Aiken, as crewman of the Aiken Local Train, worked various industries along the R Line and SA Line on January 5, 2005 including the Avondale Mills plant located in Graniteville, South Carolina. The defendants further admit, upon information and belief, that the crew had planned to tie up at Warrenville and that a taxi was contacted and dispatched at approximately 4:45 p.m. on January 5, 2005 to pick them up at Warrenville. The defendants further admit, upon information and belief, that the P-22 Train arrived at the Avondale Mills facility at approximately 6:10 p.m. with a certain number of freight cars and worked that facility. The remaining allegations of paragraphs 15, 16 and 17 of the complaint are denied.

XII.

The defendants admit so much of the allegations of paragraphs 18, 19, 20 and 21 of the complaint as allege that Defendant Ford lined the mainline switch for the Avondale Mills plant for access into the plant and that the P-22 Train entered the facility and worked the Avondale Mill facility. The defendants further admit that a decision by the crew was made to tie up at the Avondale Mill facility and that the railcars and locomotive were secured at the facility. The defendants further admit that the locomotive and two railcars were parked on the industry lead outside the gates of the Avondale facility between the mainline switch and the facility. The defendants further admit that the crew departed from Avondale Mills by way of taxi and were taken back to the Aiken depot. The remaining allegations of paragraphs 18, 19, 20 and 21 of the complaint are denied.

### XIII.

The defendants admit so much of the allegations of paragraphs 22 and 23 of the complaint as allege that Defendants Thornton, Ford and Aiken loaded their crew grips into the taxi prior to departing Avondale Mills, entered the taxi and that the taxi then departed to the Aiken Depot. The defendants further admit that the crew of Train P-22 failed to re-line the switch prior to leaving the Avondale Mills facility. The remaining allegations of paragraphs 22 and 23 of the complaint are denied.

### XIV.

The defendants admit so much of the allegations of paragraph 24 of the complaint as allege that upon arriving at the Aiken Depot, Defendant Aiken departed the depot to return home. The remaining allegations of paragraph 24 of the complaint are denied.

### XV.

The defendants admit so much of the allegations of paragraphs 25, 26 and 27 of the complaint as allege that Defendants Thornton and Ford, after returning to the Aiken Depot on January 5, 2005, handled administrative tasks which involved completing work orders and releasing the track warrants obtained earlier that day. The defendants further admit, upon information and belief, that Defendant Thornton requested that Defendant Ford clear the track warrants and that the clearing of those track warrants communicated to the dispatcher that all switches handled by the crew that day had been re-lined to the mainline. The defendants further admit that the mainline switch at the Avondale Mills facility in Graniteville was not restored to the mainline in violation of Norfolk Southern's Operating Rules. The remaining allegations of paragraphs 25, 26 and 27 of the complaint are denied.

## XVI.

The defendants deny the allegations of paragraph 28 of the complaint.

## XVII.

The defendants admit so much of the allegations of paragraphs 29, 30 and 31 of the complaint as allege that Train P-192 originated out of the Augusta yard, where it had picked up certain railcars, on January 6, 2005. The defendants further admit that the crew of Train P-192 consisted of a locomotive engineer and conductor, that the tonnage of the train was 3,520 tons, that the total train length was 2,553 feet, and that it was comprised of 42 railcars with 17 empties. The defendants further admit that the two locomotives were identified as NS6653 and NS6593. The defendants further admit that 14 of the 25 loaded railcars were designated as dangerous with three of them containing chlorine, a hazardous material. The remaining allegations of paragraphs 29, 30 and 31 of the complaint are denied.

## XVIII.

The defendants admit so much of the allegations of paragraph 32 of the complaint as allege that the crew of Train P-192 obtained Track Warrant No. 491 at approximately 2:13 a.m. which provided them with authority to travel from Augusta, Georgia to the Columbia, South Carolina area, along the R Line and through Graniteville, South Carolina. The remaining allegations of paragraph 32 of the complaint are denied.

## XIX.

The defendants admit so much of the allegations of paragraph 33 of the complaint as allege that Train P-192 traveled along the R Line at or under the 49 mile-per-hour speed limit as it approached Graniteville, South Carolina. The remaining allegations of paragraph 33 of the complaint are denied.

## XX.

The defendants deny the allegations of paragraphs 34 of the complaint.

## XXI.

The defendants admit so much of the allegations of paragraphs 35, 36, 37, 38 and 39 of the complaint as allege that Train P-192 reached the industry spur at the Avondale Mill plant on January 6, 2005 at approximately 2:39 a.m. and was diverted onto the industry spur and collided with a locomotive and certain railcars which led to the release of chlorine within a defined area in the vicinity of the collision. The defendants further admit that railcar UTLX 900270 ruptured, releasing chlorine and that the derailment occurred within Graniteville, South Carolina. The remaining allegations of paragraphs 35, 36, 37, 38 and 39 of the complaint are denied.

## XXII.

The defendants admit so much of the allegations of paragraphs 40 and 41 of the complaint as allege that the derailment and release of chlorine caused injury and reportedly resulted in nine deaths. The defendants would further allege and show that the allegations of paragraphs 40 and 41 of the complaint are immaterial, impertinent and scandalous allegations to this plaintiff's claims and should be stricken in accordance with Rule 12(f) of the South Carolina Rules of Civil Procedure.

## XXIII.

The defendants admit so much of the allegations of paragraphs 42 and 43 of the complaint as allege that chlorine is a hazardous material and that exposure to sufficient dosages could result in injury and even death. The remaining allegations of paragraphs 42 and 43 of the complaint are denied.

### XXIV.

The defendants lack sufficient information to form a belief as to the truth of the allegations of paragraph 44 of the complaint and, therefore, deny them.

### XXV.

In response of the allegations of paragraph 45 of the complaint, including Section I, a though r, and Section II, a through l, the defendants admit that certain employees of NSRC, Defendants Aiken, Ford and Thornton, failed to restore the mainline switch at the Avondale Mill plant located in Graniteville, South Carolina, resulting in Train 192 entering the industry spur at approximately 2:39 a.m. on January 6, 2005 and colliding with a locomotive and certain railcars which led to the release of chlorine within a defined area in the vicinity of the collision. The defendants deny that any conduct by the employees was intentional, grossly negligent, reckless, willful or wanton. The defendants admit only simple negligence by the employees in failing to re-line the switch and do not make any further admissions. The remaining allegations of paragraph 45, and all of its subparts, of the complaint are denied.

### XXVI.

The defendants admit so much of the allegations of paragraph 46 of the complaint as allege that Defendants Ford, Aiken and Thornton were responsible for complying with Norfolk Southern Operating Rule 104 which provides that switches and derails must be properly aligned and secured after having been used. The remaining allegations of paragraph 46 of the complaint are denied.

### XXVII.

In response of the allegations of paragraph 47 of the complaint, the defendants admit that Defendants Aiken, Thornton and Ford were responsible for complying with Norfolk Southern

Operating Rule 181 which provides that when clearing at a point where a switch must be returned to a normal position clear must not be given until the switch has been locked in normal position. The remaining allegations of paragraph 47 of the complaint are denied.

### XXVIII.

The defendants deny the allegations of paragraph 48 of the complaint.

### XXIX.

The defendants admit so much of the allegations of paragraph 49 of the complaint as allege that after returning to the Aiken Depot on January 5, 2005, Defendants Ford and Thornton handled certain administrative tasks resulting in Norfolk Southern reporting Hours-of-Service violation to the Federal Railroad Administration arising from the time taken to perform the administrative tasks. Defendant Ford released the track warrant after the crew had left the industry lead and Defendant Thornton completed and faxed work orders after the crew had left the industry lead. Norfolk Southern denies that there were any other violations of the Hours-of-Service Act by any of Train P-22's crew on January 5, 2005. The remaining allegations of paragraph 49 of the complaint are denied.

### XXX.

The allegations of paragraphs 50, 51 and 52 of the complaint state legal conclusions to which no response is required by these defendants. To the extent that the allegations of paragraphs 50, 51 and 52 of the complaint require a response from these defendants, they are denied to the extent they are contrary to South Carolina and Federal statutory and common law.

### XXXI.

The defendants deny the allegations of paragraphs 53 and 54 of the complaint.

## XXXII.

The defendants admit so much of the allegations of paragraph 55 of the complaint as allege that Defendant Ford drove from his home in or around Columbia, South Carolina to the Aiken Depot and arrived at approximately 7:00 a.m. and has previously testified that it takes him approximately 50 minutes to drive from his residence to the Aiken Depot. The remaining allegations of paragraph 55 of the complaint are denied.

## XXXIII.

The defendants deny the allegations of paragraphs 56, 57 and 58 of the complaint.

## XXXIV.

The defendants admit so much of the allegations of paragraph 59 of the complaint as allege that after returning to the Aiken Depot on January 5, 2005, Defendant Ford handled administrative tasks, thus resulting in NSRC reporting an Hours-of-Service violation to the Federal Railroad Administration arising from the time taken to perform the administrative tasks. Defendant Ford released the track warrant after the crew had left the industry lead. The remaining allegations of paragraph 59 of the complaint are denied.

## XXXV.

The defendants admit so much of the allegations of paragraph 60 of the complaint as allege that Defendant Thornton completed certain administrative tasks on January 3, January 4 and January 5, 2005 related to the completion of work orders resulting in Hours-of-Service violations. The remaining allegations of paragraph 60 of the complaint are denied.

## XXXVI.

The defendants admit so much of the allegations of paragraph 61 of the complaint as allege that Defendant Thornton completed administrative tasks after 7:00 p.m. on January 5,

2005 and that NSRC reported an Hours-of-Service violation to the Federal Railroad Administration arising from the time taken to perform the administrative tasks. The remaining allegations of paragraph 61 of the complaint are denied.

### XXXVII.

The defendants deny the allegations of paragraphs 62 and 63 of the complaint.

### XXXVIII.

The defendants admit so much of the allegations of paragraph 64 of the complaint as allege that NSRC maintains Hours-of-Service records for its employees electronically in a computer database in accordance with the FRA rules and/or regulations. The remaining allegations of paragraph 64 of the complaint are denied.

### XXXIX.

The defendants deny the allegations of paragraph 65 of the complaint. The defendants would further allege and show that the allegations of paragraph 65 of the complaint are immaterial, impertinent and scandalous and should be stricken in accordance with Rule 12(f) of the South Carolina Rules of Civil Procedure.

### XL.

The defendants deny the allegations of paragraph 66 of the complaint. The defendants would further allege and show that the allegations of paragraph 66 of the complaint are immaterial, impertinent and scandalous and should be stricken in compliance with Rule 12(f) of the South Carolina Rules of Civil Procedure.

### XLI.

The defendants deny the allegations of paragraph 67 of the complaint. The defendants would further allege and show that the allegations of paragraphs 67 of the complaint are

immaterial, impertinent and scandalous and should be stricken in accordance of Rule 12(f) of the South Carolina Rules of Civil Procedure.

## XLII.

The defendants admit so much of the allegations of paragraph 68 of the complaint as allege that in March of 1999, Defendant Thornton was dismissed from service as a result of his involvement in an incident while on duty although no derailment occurred and no personal injuries were reported due to the 1999 incident. The defendants would allege and show that Defendant Thornton participated in a disciplinary hearing and was dismissed for the 1999 incident. In the course of the handling of his discipline, under the process and practices established by the applicable collective bargaining agreement, he was restored to service. The remaining allegations of paragraph 68 of the complaint are denied.

## XLIII.

The defendants deny the allegations of paragraphs 69, 70, 71 and 72 of the complaint.

## XLIV.

In response to the allegations of paragraph 73 of the complaint, the defendants admit so much of the allegations as allege that in his 25 plus years of service on the railroad Defendant Thornton was regularly supervised and was cited for rules violations if any rules violations were observed. The remaining allegations of paragraph 73 of the complaint are denied.

## XLV.

The defendants deny the allegations of paragraphs 74, 75 and 76 of the complaint.

## XLVI.

The defendants deny the allegations of paragraph 77 of the complaint. The defendants would further allege and show that the allegations of paragraph 77 of the complaint are

immaterial, impertinent and scandalous and should be stricken in accordance with Rule 12(f) of the South Carolina Rules of Civil Procedure.

### XLVI.

The defendants admit so much of the allegations of paragraph 78 as allege that the switch for the Avondale Mills Industry Spur track was equipped with a high mast and red and white reflectorized target with the red side being displayed perpendicular to the track when the switch is aligned for movement onto the industry spur track. The remaining allegations of paragraph 78 of the complaint are denied.

### XLVII.

The defendants deny the allegations of paragraphs 79, 80, 81, 82 and 83 of the complaint.

### XLVII.

The defendants deny the allegations of paragraphs 84, 85 and 86 of the complaint.

### XLIX.

The defendants lack sufficient information to form a belief as to the truth of the allegations of paragraphs 87, 88 and 89 of the complaint and, therefore, deny them.

### L.

The defendants deny the allegations of paragraph 90 of the complaint.

### LI.

The allegations of paragraph 91 of the complaint do not require a response from these defendants. To the extent that the allegations of paragraph 91 of the complaint require a response from these defendants, these defendants also request a trial by jury.

LII.

The defendants deny each and every allegation of the plaintiff's complaint not specifically admitted, explained or modified hereinabove.

## FOR A SECOND DEFENSE

I.

The defendants incorporate herein the allegations of their First Defense, not inconsistent herewith.

II.

The defendants allege that the plaintiff's complaint fails to state facts sufficient to constitute a case of action and should be dismissed pursuant to the provisions of Rule 12(b)(6) of the South Carolina Rules of Civil Procedure.

## FOR A THIRD DEFENSE

I.

The defendants incorporate herein the allegations of their First Defense, not inconsistent herewith.

II.

The defendants allege that the plaintiff's injuries, if any, were caused by the intervening and superseding acts of others for whom these defendants are not liable or responsible.

## FOR A FOURTH DEFENSE

I.

The defendants incorporate herein the allegations of their First Defense, not inconsistent herewith.

## II.

The defendants allege that to the extent that the damages and injuries of the plaintiff were the direct and proximate result of negligent, reckless, and willful conduct on the part of the plaintiff which combined and concurred with any negligence on the part of these defendants, which is specifically denied, except to the extent expressly admitted above, and admitted solely for the purpose of this defense and no other, and to the extent the alleged injuries and damages to the plaintiff would not have occurred if the plaintiff had not been guilty of such negligence and recklessness, the plaintiff's claims are barred in whole or in part. The complaint is barred to the extent the plaintiff's contributory negligence and recklessness is more than 50% of the total negligence in this action. The plaintiff's recovery should be reduced by the percentage of the plaintiff's negligence and recklessness to the extent that such negligence and recklessness is 50% or less than the total negligence in this action.

## **FOR A FIFTH DEFENSE**

### I.

The defendants incorporate herein the allegations of their First Defense, not inconsistent herewith.

### II.

The defendants allege that the plaintiff's claim for punitive damages is barred by the Fifth, Sixth, Seventh, Eighth and Fourteenth Amendments of the Constitution of the United States of America and by Article I, Section 15, and Article I, Section 3 of the Constitution of the State of South Carolina.

## FOR A SIXTH DEFENSE

### I.

The defendants incorporate herein the allegations of their First Defense, not inconsistent herewith.

### II.

The defendants allege that certain individuals have been paid in connection with expenses incurred and inconvenience suffered as a result of the accident. Accordingly, accord and satisfaction are pled as a complete or partial bar to the plaintiff's claims to the extent such payment has occurred.

## FOR A SEVENTH DEFENSE

### I.

The defendants incorporate herein the allegations of their First Defense, not inconsistent herewith.

### II.

The defendants allege that certain individuals have been paid in connection with expenses incurred and inconvenience suffered as a result of the accident. Accordingly, payment is pled as a complete or partial bar to the plaintiff's claims to the extent such payment has occurred.

## FOR AN EIGHTH DEFENSE

### I.

The defendants incorporate herein the allegations of their First Defense, not inconsistent herewith.

II.

The defendants allege that certain individuals have been paid in connection with expenses incurred and inconvenience suffered as a result of the accident. Accordingly, set off is pled as a partial bar to the plaintiff's claims to the extent such payment has occurred.

## FOR A NINTH DEFENSE

I.

The defendants incorporate herein the allegations of their First Defense, not inconsistent herewith.

II.

The defendants allege that it is not liable to the plaintiff because any claims asserted by the plaintiff are preempted and precluded as a matter of law by the Supremacy Clause of the Constitution of the United States, by federal statutes, and by regulations promulgated by the Federal Railroad Administration, the United States Department of Transportation, and the Research and Special Programs Administration, among others.

## FOR A TENTH DEFENSE

I.

The defendants incorporate herein the allegations of their First Defense, not inconsistent herewith.

II.

The defendants allege that certain allegations of the complaint, including pleading in an evidentiary nature, are immaterial, impertinent and intended to be and are scandalous and should be stricken from the complaint pursuant to Rule 12(f) of the South Carolina Rules of Civil Procedure.

WHEREFORE, having fully answered the complaint of plaintiff, the defendants, Norfolk Southern Corporation and Norfolk Southern Railway Company, pray that the complaint be dismissed with costs, and for such other and further relief as the Court may deem just and proper.

November 14, 2007

Daniel B. White (S.C. Bar No. 6070)
Ronald K. Wray, II (S.C. Bar No. 65246)
Christopher M. Kelly (S.C. Bar No. 14382)
GALLIVAN, WHITE & BOYD, P.A.
55 Beattie Place, Suite 1200
P.O. Box 10589
Greenville, SC 29603
(864) 271-9580
(864) 271-7502 FAX
dwhite@gwblawfirm.com
rwray@gwblawfirm.com
ckelly@gwblawfirm.com

AND

Richard H. Willis (Fed. I.D. #6159)
Karen Crawford (Fed. I.D. #925)
NELSON MULLINS RILEY
  AND SCARBOROUGH LLP
P.O. Box 11070
Columbia, SC 29211
(803) 255-9480

Attorneys for Defendants,
Norfolk Southern Railway Company and
Norfolk Southern Corporation

The defendants, Norfolk Southern Corporation and Norfolk Southern Railway Company, respectfully demand a trial by jury.

Christopher M. Kelly

STATE OF SOUTH CAROLINA     )

                              )    IN THE COURT OF COMMON PLEAS

COUNTY OF AIKEN            )

                              )

Mary Boyd                    )

                              )    **NOTICE OF MOTION AND**

          Plaintiff,         )    **MOTION TO STRIKE**

                              )

     v.                     )

                              )

Norfolk Southern Corporation and Norfolk  )

Southern Railway Company, Benjamin    )    C.A. No.: 2007-CP-02-1588

Aiken, Mike Ford and Jimmy Ray Thornton,  )

                              )

          Defendants.       )

**TO:   DOUGLAS M. SCHMIDT, ATTORNEY FOR THE PLAINTIFF**

     YOU WILL PLEASE TAKE NOTICE that Defendants, Norfolk Southern Corporation and Norfolk Southern Railway Company, by and through their undersigned attorneys, will move before the presiding judge of the Court of Common Pleas For The Second Judicial Circuit, at such time and place as the Court may determine, but no sooner than 10 days after service hereof, for an order pursuant to Rule 12(f) of the South Carolina Rules of Civil Procedure striking certain portions of Plaintiff's Complaint on the grounds that the allegations are immaterial, impertinent, intended to be scandalous, irrelevant, inadmissible and unfairly prejudicial to Defendants.

     This motion is based upon the pleadings in the case, Rule 12(f) of the South Carolina Rules of Civil Procedure and applicable common and statutory law.

**(SIGNATURE ON FOLLOWING PAGE)**

Respectfully submitted,

November 14, 2007

*Christopher M. Kelly by Ronald Wray*
Christopher M. Kelly
Daniel B. White
Ronald K. Wray, II
GALLIVAN, WHITE & BOYD, P.A.
55 Beattie Place, Suite 1200
P.O. Box 10589
Greenville, SC 29603
(864) 271-9580
(864) 271-7502 FAX
dwhite@gwblawfirm.com
rwray@gwblawfirm.com
ckelly@gwblawfirm.com

AND

Richard H. Willis
Karen Crawford
NELSON MULLINS RILEY
    AND SCARBOROUGH LLP
P.O. Box 11070
Columbia, SC  29211
(803) 255-9480

Attorneys for Defendants,
Norfolk Southern Railway Company and
Norfolk Southern Corporation

2

STATE OF SOUTH CAROLINA )        IN THE COURT OF COMMON PLEAS

COUNTY OF AIKEN )

Mary Boyd )

         Plaintiff, )

       v. )

Norfolk Southern Corporation and Norfolk )
Southern Railway Company, Benjamin )
Aiken, Mike Ford and Jimmy Ray Thornton, )

         Defendants. )

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company's (1) Answer to Plaintiff's Complaint and (2) Defendants' Notice of Motion and Motion to Strike was served upon all counsel of record this 15th day of November, 2005, by depositing copies of the same in the United States mail, postage prepaid, and addressed as follows:

Douglas M. Schmidt
335 City Park Avenue
New Orleans, LA 70119

Mr. Monteith P. Todd
Sowell Gray Stepp & Lafitte, L.L.C.
P.O. Box 11449
Columbia, SC 29211

Mr. J. Arthur Davison
Fulcher Hagler LLP
P.O. Box 1477
Augusta, GA 30903-1477

Mr. Gray T. Culbreath
Collins & Lacy PC
1330 Lady Street, Suite 601
P.O. Box 12487
Columbia, SC 29211

Christopher M. Kelly

1